IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL INDICTMENT |
| v. | NO. 1:12-CR-79-SCJ-GGB |
| MARCO LARENZO HINES, | |
| Defendant. | |

### FINAL REPORT AND RECOMMENDATION

Defendant Marco Larenzo Hines ("Defendant") is charged with being a convicted felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). Pending before this Court are Defendant's Motions to Dismiss Indictment [Docs. 16 and 18] and Motion to Suppress Statements and Evidence [Doc. 19]. I held an evidentiary hearing on the suppression issues on March 6, 2013. All transcript references are to the transcript of that hearing. My recommendations follow.

### I.   FACTS RELATING TO MOTION TO SUPPRESS

On June 24, 2011, at approximately 1:30 p.m., Atlanta Police Officers Ronald Sluss ("Officer Sluss") and Tanya Alejandro ("Officer Alejandro") were on patrol in their police vehicle. They observed Defendant standing at a bus stop drinking from a styrofoam cup. The officers also observed that Defendant had a shopping cart

AO 72A
(Rev.8/82)

containing groceries and a 40-ounce bottle of beer. The officers saw Defendant pour beer from the bottle into the styrofoam cup from which he was drinking. (Tr. 7-11, 28-30).

The officers then drove their vehicle towards the bus stop, exited their vehicle and walked over to Defendant. They identified themselves as police officers, and Officer Sluss told Defendant that he was not supposed to be drinking on a city sidewalk. The officers asked Defendant for identification, and Defendant provided his Georgia Identification Card. The officers then asked Defendant if he had any weapons. (Tr. 12-13, 24, 30-31). Defendant responded that he did have a weapon. (Tr. 13, 31). During this exchange, the officers maintained a calm demeanor and did not draw their weapons. (See Tr. 12-13, 30).

After Defendant told the officers that he had a weapon, the officers placed Defendant in handcuffs. Officer Alejandro asked Defendant where the weapon was located, and Defendant responded that it was in his waistband. Officer Alejandro then raised Defendant's shirt and pulled an unholstered semi-automatic pistol loaded with five rounds of ammunition from Defendant's front waistband. (Tr. 13, 31-32).

Officer Alejandro asked Defendant why he had the gun. Defendant responded that it was his girlfriend's gun and that he had it for his protection. The officers also

2

asked Defendant where he was coming from. Defendant then said that he had just bought the groceries and was headed to his girlfriend's house at Confederate Courts Apartments (about a mile away) to take the groceries to her. (Tr. 32-33).

Officer Sluss then used Defendant's identification to check for outstanding warrants. He also checked to see if the gun had been reported stolen—both results were negative. (Tr. 14-15).

After checking Defendant's identification, Officer Sluss asked Defendant if he was a convicted felon. Defendant responded that he had been convicted of burglary, armed robbery and aggravated assault on a police officer. (Tr. 15-16, 33). Officer Sluss confirmed by telephone that Defendant was a convicted felon and then called for another officer to come to the scene to transport Defendant to jail. (Tr. 15-16). Defendant was not given Miranda warnings before he was taken to jail. (Tr. 24). The officers charged Defendant with carrying a concealed weapon and possession of a firearm by a convicted felon. (Tr. 18).

Additional facts are discussed in context below.

## II.   DISCUSSION OF MOTION TO SUPPRESS

Defendant seeks to suppress the gun that was discovered in his waistband and any statements that he made during his encounter with the police. He contends that the

3

gun was seized as a result of an unlawful detention and seizure in violation of his Fourth Amendment rights and that any statements he made were the fruits of an illegal arrest and in violation of his Miranda[1] rights.

### A. Defendant was in a consensual encounter with the police up until the time that he admitted having a weapon and was handcuffed.

The government alleges that up until Defendant admitted having a weapon, his encounter with the police was a consensual encounter that did not implicate the Fourth Amendment.

There are three categories of police-citizen encounters for purposes of analyzing whether evidence was obtained in violation of the Fourth Amendment: police-citizen communications involving no coercion or detention, brief seizures or investigative detentions that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause. United States v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11th Cir. 1986); United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006); United States v. Allen, 447 F.App'x 118, 120 (11th Cir. 2011).

The first type of encounter, commonly referred to as a consensual encounter, does not constitute a "seizure" sufficient to implicate the Fourth Amendment. Perez,

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

443 F.3d at 777-78. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242 (2002). The police may pose questions of individuals and ask for identification, provided that "they do not induce cooperation by coercive means." Id. at 201, 122 S.Ct. at 2110. "If a reasonable person would feel free to terminate the encounter, then he [] has not been seized." Id.

Factors relevant to determining whether a police-citizen encounter was consensual or rose to the level of a seizure include: "'whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.'" Perez, 443 F.3d at 778 (quoting United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991)). An officer's display of his badge and the presence of a uniform and holstered firearm are given little weight in the analysis, as the public knows that most officers are armed and are often required to wear uniforms. Id. at 778 n. 2 (citing Drayton, 536 U.S. at 204-05, 122 S.Ct. at 2112).

5

A Fourth Amendment "seizure" only occurs when a person's freedom of movement is restrained by means of physical force or by submission to a show of authority. Id. at 778; Allen, 447 F.App'x at 120.

The officers initially approached Defendant because they suspected that he violated the Atlanta ordinance that prohibits drinking in public. Section 10-8 of the Atlanta, Georgia, Code of Ordinances makes it a violation for "any person to drink any vinous, malt or other alcoholic beverage while on any streets, sidewalks, alleyways, parking areas, or other open areas operated and controlled by the city, or while in or on the grounds of any MARTA station." (Gov't Exh. 5).

Defendant's initial encounter with the officers did not rise to the level of a seizure implicating the Fourth Amendment. The officers approached Defendant in a public location, and they did not block him from leaving. Neither officer brandished a weapon or raised his voice when speaking to Defendant. (See Tr. 12-13, 30). Although Officer Sluss testified that Defendant would not have been free to walk away once they verified that he had been drinking in public, (see Tr. 24), the officers' subjective belief is not controlling. Rather, the standard is based on whether a reasonable person in the position of the individual being questioned would feel free to terminate the interaction. I.N.S. v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762,

6

80 L.Ed.2d 247 (1984). Nothing prohibited the officers from asking in a consensual encounter whether Defendant possessed a weapon. Cf. Allen, 447 F.App'x at 121 (finding encounter with police consensual even when police asked Defendant what was in his pants pocket).[2] Defendant was not under arrest until after the gun was found. Therefore, the gun and Defendant's statements leading up to his detention should not be suppressed.

> **B.  Defendant's statement that the weapon was in his waistband should not be suppressed; but his statements after the officers found the gun should be suppressed.**

Once Defendant admitted that he had a weapon, the officers were justified in handcuffing him and searching for that weapon. See Allen, 447 F.App'x. at 121.

Defendant argues that his statements in response to questioning after he was handcuffed are due to be suppressed because the police neglected to give him Miranda warnings before subjecting him to custodial interrogation.

---

[2]Even assuming arguendo that Defendant's initial encounter with the police was not consensual, the officers had a reasonable and articulable suspicion that Defendant had just violated Atlanta's ordinance that prohibits drinking in public, and the police were therefore authorized to detain him to inquire about that violation. During any investigative detention, the officers could also ask whether Defendant had a gun in order to ensure their safety.

7

The well-known general rule is that a person who is arrested and detained must be given full Miranda warnings in order for his statements, made in response to interrogation by a law enforcement officer, to be used against him in court. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612.

Miranda warnings are required only when a defendant is interrogated while in custody. See Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994). To determine whether a suspect is in custody, the court must examine the objective circumstances from the perspective of a reasonable person in the defendant's position. Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). While courts consider the totality of the circumstances, "the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." Stansbury, 511 U.S. at 322, 114 S.Ct. at 1529 (internal quotation marks, citation, and alteration omitted); United States v. Acosta, 363 F.3d 1141, 1149 (11th Cir. 2004).

Miranda warnings are not always required for questioning during investigative detentions, even though the person being questioned is not free to leave. See Acosta, 363 F.3d at 1148-50. The test in that situation is not whether the suspect is free to leave, but again, is whether he is "'subjected to restraints comparable to those associated with

8

a formal arrest.'" Id. at 1149 (quoting Berkemer, 468 U.S. at 441, 104 S.Ct. at 3151). The handcuffing of a suspect does not necessarily turn an investigative stop into an arrest. See id. at 1147. Where agents reasonably believe a person presents a danger to their safety, handcuffing is permitted. United States v. Hastamorir, 881 F.2d 1551, 1557 (11th Cir. 1989) (handcuffing of person at a traffic stop permitted where reasonable agents believe a person presented risk to their safety).

Under the applicable authorities, Defendant was in an investigative detention after he admitted possessing a weapon and before the gun was found. The officers were not required to give Miranda warnings before asking Defendant where the weapon was located. Therefore, Defendant's statement that the gun was in his waistband should not be suppressed.

After the officers found the gun, they were authorized to arrest Defendant for carrying a concealed weapon in violation of Georgia law. See O.G.C.A. § 16-11-126. I conclude that once the gun was found on Defendant's possession, Defendant was under arrest. Cf. Allen, 447 F.App'x at 121 ("Once the gun was found, Allen was arrested."). At that point, Defendant was in handcuffs and knew that the police had found a concealed weapon on his person. A reasonable person would have believed that he was under arrest.

9

After the gun was found, the police asked Defendant why he had the gun, where he was coming from, and whether he was a convicted felon. (See Tr. 32-33). His answers to those questions should be suppressed because they were given in response to custodial questioning without the benefit of Miranda warnings.[3] Accordingly, I recommend that the Motion to Suppress be granted in part and denied in part.

### III. FACTS RELEVANT TO DEFENDANT'S MOTION TO DISMISS INDICTMENT[4]

Defendant moves to dismiss the indictment against him for pre-indictment delay, an alleged violation of the Tenth Amendment and violation of the double jeopardy clause of the Constitution.

In early July 2011, a federal task force agent of the Bureau of Alcohol Tobacco and Firearms ("ATF") requested certified copies of Defendant's prior convictions. He received those certified copies on July 22, 2011.

On September 29, 2011, Defendant entered a guilty plea in Fulton County Superior Court to both charges against him: a felony charge of being a felon in possession of a firearm, and a misdemeanor charge of carrying a concealed pistol. On

---

[3] This ruling does not prevent the Government from presenting independently obtained evidence of Defendant's prior felony convictions.

[4] I did not hold a hearing on Defendant's Motion to Dismiss the Indictment. However, the following facts are not disputed.

the same day, a Fulton County Superior Court Judge sentenced Defendant to five years of probation and 150 hours of community service.

The government sought and obtained a waiver of the United States Justice Department's Petite policy in February 2012. The Petite policy is a policy of the Department of Justice that, absent compelling reasons, a federal prosecution should not follow a state prosecution for the same conduct. United States v. Sandate, 630 F.2d 326, 327-28 (5th Cir. 1980).

On March 13, 2012, a federal grand jury in this district returned an indictment against Defendant for being a felon in possession of a firearm in violation of federal law. The indictment charges that Defendant had three prior felony convictions that trigger the application of § 924(e), the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). The ACCA requires a mandatory minimum fifteen-year sentence for a defendant who is (1) convicted of being a felon in possession of a firearm and (2) has "three previous convictions by any court ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another." Id.

AO 72A
(Rev.8/82)

## IV.   DISCUSSION OF DEFENDANT'S MOTION TO DISMISS INDICTMENT

### A.   Pre-Indictment delay

Defendant moves to dismiss the indictment on the ground that prejudicial pre-indictment delay violated his Fifth Amendment right to due process.  To establish a due process violation based on pre-indictment delay, a defendant must show that the delay resulted in actual prejudice, was intentional, and was improperly motivated. United States v. Lovasco, 431 U.S. 783, 789-90, 97 S.Ct. 2044, 2048-49, 52 L. Ed. 2d 752 (1977).  The Eleventh Circuit has explained that to prevail on a motion to dismiss for pre-indictment delay, a defendant must show "'(1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage.'" United States v. Wetherald, 636 F.3d 1315, 1324 (11th Cir. 2011)(quoting United States v. Lindstrom, 698 F.2d 1154, 1157 (11th Cir. 1983).

The only prejudice identified by Defendant is that he "no longer has the presumption of innocence in this Court, nor any meaningful ability to have a trial on the merits of his case (as the government will no doubt seek to have his prior guilty plea to these charges entered into evidence against him here)." [Doc. 18 at p. 4].  However, this purported prejudice is present any time a state court conviction is followed by a

12

AO 72A
(Rev.8/82)

federal prosecution arising from the same conduct. Yet, the Supreme Court has held that successive prosecutions based on the same conduct are permissible if brought by separate sovereigns. United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). Lanza upheld a federal prosecution that followed a state prosecution and conviction for the same acts. The United States and the State of Georgia are separate sovereigns. Thus, Defendant's argument is without merit.

Moreover, Defendant has not made a colorable showing that the Government purposely delayed its case in order to gain a tactical advantage. As the government points out, it does not need to rely on Defendant's guilty plea or state court conviction in order to convict Defendant on the federal charge. As shown in the hearing on the Motion to Suppress, the government has strong evidence that the Defendant was a convicted felon in possession of a firearm.

Defendant may be suggesting that (1) the Government waited to see what Defendant's sentence would be in the Fulton County Court; and (2) Government decisionmakers then sought a federal indictment because they believed that the state court sentence was too light. However, even if that is what happened, such a motivation would not be improper or a basis for dismissal. In fact, the Petite Policy requires a showing that there is a compelling reason to bring federal charges following a state

13

prosecution for the same underlying acts. <u>Rinaldi v. United States</u>, 434 U.S. 22, 24 n.5, 98 S.Ct. 81, 82 n.5, 54 L.Ed.2d 207 (1977). Defendant's probated sentence in his state court case (along with his three prior felony convictions) might have provided such a compelling reason under Justice Department policies. See <u>United States v. Clemons</u>, No. 3:08-CR-102, 2010 WL 670110, at *2 (E.D. Tenn. Feb. 22, 2010)(government informed the court that the Attorney General approved the federal indictment because the defendant's state sentence did not sufficiently vindicate the strong federal interest in preventing cocaine trafficking by a recidivist cocaine offender).

### B.     **Tenth Amendment violation**

Next, Defendant argues that the federal indictment was "in excess of the authority that federalism defines" in violation of the Tenth Amendment to the Constitution. [Doc. 18 at p. 7].

The Tenth Amendment states, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend X. The purpose of this Amendment is to "allay fears that the new national government might seek to exercise powers not granted, and that the states might not be able to exercise fully their reserved powers." <u>United States v. Darby</u>, 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941).

14

Defendant cites no relevant authority to support his Tenth Amendment argument. His argument is foreclosed by Supreme Court precedent that allows federal prosecutions for the same conduct previously prosecuted and punished by a state. Lanza, 260 U.S. at 382, 43 S.Ct. at 142; Abbate v. United States, 359 U.S. 187, 193-95, 79 S.Ct. 666, 670-71, 3 L.Ed.2d 729 (1959).

### C.   **Double Jeopardy**

Finally, Defendant argues that the instant federal prosecution violates the Double Jeopardy Clause of the Fifth Amendment to the Constitution because he was already prosecuted and convicted in Fulton County Superior Court for the same offenses. However, as Defendant concedes, this argument is foreclosed by the Supreme Court's decision in Lanza, discussed above. [Doc. 18, p. 11].

### V.   **CONCLUSION**

In sum, I **RECOMMEND** that Defendant's Motion to Suppress Statements and Evidence [Doc. 19] be **GRANTED IN PART AND DENIED IN PART.** Specifically, I recommend that Defendant's statement that he had a weapon in his waistband and the gun found in his possession not be suppressed, but that his statements after the gun was found in his possession be suppressed.

15

I further **RECOMMEND** that Defendant's motions to dismiss indictment [Docs. 16 and 18] be **DENIED**.

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

It is so **ORDERED** and **RECOMMENDED**, this  13th   day of June, 2013.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A (Rev.8/82)